**AFFIDAVIT**

I, David F. Simmons, Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives "ATF", being duly sworn, state:

1. I have been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice and have been so employed since 2015. Prior to that I worked as a local law enforcement officer for nine years within Massachusetts. I am presently assigned to the Bridgewater Field Office, where I am one of a group of Special Agents who work with state and local law enforcement to uncover violations of laws specifically related to firearms trafficking, firearms possession by prohibited persons, use of firearms in furtherance of drug trafficking crimes, and the possession of illegal explosive devices in southeastern Massachusetts. I personally participated in the investigation of violations of federal law by **Alexander ESTEVAO**.

2. During my tenure with ATF, I have participated in dozens of investigations and have had training in firearm, explosive, and narcotics investigations. I have conducted surveillance, worked with confidential informants, and participated in investigations using court-authorized interception of wire and electronic communications. During my law enforcement career, I have also participated in the

preparation and execution of arrest warrants and search warrants.

3. I have personally participated in the investigation of Alexander ESTEVAO, date of birth xx/xx/1998, since October of 2019. I am familiar with investigation of ESTEVAO that began in July of 2019 even though I was not involved in the investigation at that time.

4. I am familiar with the facts and circumstances of this investigation based upon: (a) my personal knowledge and involvement in the investigation; (b) my discussions with fellow agents and officers who participated in the investigation; (c) my review of reports of fellow agents; and (d) my experience and training as a criminal investigator.  Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested arrest warrant, I have not set forth every fact learned during the course of the investigation. Facts not set forth herein are not being relied upon to support this affidavit in support of the application.

## INTRODUCTION

5. I am submitting this affidavit in support of an application for the issuance of a complaint and arrest warrant for Alexander ESTEVAO.  As more fully described below, I assert that there is probable cause to believe that **Alexander ESTEVAO** has violated federal firearms laws, including violations of

Title 26, United States Code 5861(d), possession of unregistered firearms, and Title 18, United States Code, 922(a)(1)(A), engaging in the business of dealing in firearms without a license.

**FACTS**

6. On July 31, 2019, ATF, with the assistance of the Mashpee Police Department and New Bedford Police Department, conducted a controlled purchase of one Colt, MKIV Series 70 Gold Cup National Match .45 caliber semi-automatic pistol bearing serial number 70N18382, and sixty rounds of .45 caliber ammunition from Alexander ESTEVAO in Mashpee, Massachusetts. In so doing, ATF cooperating witnesses ("CWs") were utilized.

7. During the course of the controlled purchase, ESTEVAO was observed operating a red 2017 Mitsubishi Lancer bearing Massachusetts Registration 7JSY80 registered to Tina LINEBAUGH to and from the buy location. ATF observed ESTEVAO as the lone operator of this vehicle. The firearm was sold to the ATF CWs for the sale price of $1,200.00. During the transaction ESTEVAO told the CWs, among other things, that he would have access to more firearms within the next two weeks.

8. This investigation remained open and on October 10, 2019, an ATF CW indicated that ESTEVAO had contacted the CW and was seeking, in sum and substance, to sell two explosive type devices to the CW. ESTEVAO, while utilizing cellular telephone

number (774)327-4789, provided no further information to the CW relative to the make-up of the devices other than indicating that one of the devices would make a car into a convertible. This phone call was audio recorded and spoken in Portuguese. The phone call was subsequently translated by a Brazilian Police Officer from the Barnstable Police Department. ESTEVAO also claimed to have the devices accessible to him and agreed to sell the devices for the sale price of $1,500.00 total. ESTEVAO sent an address to conduct the transaction via text message as, "127 Marion Rd, Wareham, MA 02571."

9.  On October 11, 2019, ATF attempted to arrange the controlled purchase of the two explosive type devices from ESTEVAO. The ATF CW placed a series of calls and text messages to ESTEVAO at (774)327-4789, with no response.

10. Intelligence led investigators to suspect ESTEVAO was currently staying at his mother's apartment, located at 23C West Bay Road in Osterville, Massachusetts.

11. On October 11, 2019, at approximately 2:45 p.m., surveillance had already been established at 23C West Bay Road in Osterville, Massachusetts by ATF Special Agents/Task Force Officers and the Barnstable Police Department, among other law enforcement agencies. At approximately this time, ATF Special Agents/Task Force Officers and members of the Barnstable Police Department observed a male matching the description of ESTEVAO

leave 23C West Bay Road in Osterville, Massachusetts. Agents and officers approached this male, and ATF Special Agent Brian Higgins positively identified ESTEVAO. ESTEVAO was placed under arrest for state violations related to the possession and sale of the firearm and ammunition on July 31, 2019 in Mashpee, Massachusetts.

12. Subsequent to the arrest of ESTEVAO, S/A Higgins read ESTEVAO the charges and his Miranda warnings. ESTEVAO acknowledged his rights and immediately stated that he had marijuana in his left front pocket of his sweat pants. ESTEVAO next stated that he had "coke" in his right front sweat pant pocket.

13. In the right front pocket of ESTEVAO's pants, a plastic bag was located containing smaller plastic baggies of suspected cocaine packaged for sale (later weighed and found to have an approximate cumulative weight of 21 grams). S/A Higgins asked ESTEVAO about the substances within the baggies and ESTEVAO identified the substances as cocaine, which he intended to sell. Law enforcement also seized two cellular telephones, one black blade and a silver Motorola, from the sweatshirt pouch of ESTEVAO. When law enforcement asked ESTEVAO if he had any guns, ammunition, or explosives in the apartment, ESTEVAO denied this and stated he wanted a lawyer.

14. S/A Higgins advised ESTEVAO that investigators observed him exit the residence, walking quickly, while looking in all directions and on his cellular telephone. S/A Higgins told ESTEVAO that investigators believed he was en route to conduct a narcotics transaction. S/A Higgins further advised that, based upon these facts, law enforcement planned to "freeze" the apartment and seek a search warrant. After remaining silent for a few moments, ESTEVAO asked to speak with S/A Higgins. S/A Higgins advised ESTEVAO that he had previously told investigators he wanted a lawyer. At this time, ESTEVAO made a spontaneous utterance and admitted that he had more cocaine within 23C West Bay Road in Osterville, Massachusetts. ESTEVAO indicated that the cocaine was contained within a red bag next to a bed on the second floor of the apartment.

15. Barnstable Police Detectives and ATF Special Agents/Task Force Officers spoke to the mother of ESTEVAO, Ilmara MARSALL. MARSALL, among other things, signed a Consent to Search form, authorizing law enforcement to retrieve cocaine and any other illegal articles there.

16. A red backpack was found on the floor at the top of the spiral staircase within the apartment next to a bed. A check of the contents of the bag revealed, among other things, (1) box of sandwich bags, (1) digital scale, (1) bottle of Inositol powder, (1) Unique Puffs tin containing a green leafy substance,

a total of $5,702.00 in U.S. Currency, and (1) large plastic bag of white powder with a gross weight of approximately 229 grams.

17. A sweep conducted by a Massachusetts State Police ("MSP") explosives detection K-9 was negative at the apartment.

18. On October 11, 2019, following the transport of ESTEVAO to the MSP Bourne Barracks, the ATF, MSP, Barnstable Police Department, and the Wareham Police Department proceeded to 174 Marion Road in Wareham, Massachusetts, to speak to occupants of the residence. Law enforcement identified themselves and informed Mike PAINTER and Tina LINEBAUGH they wanted to speak about the incident which had occurred involving Domonique LINEBAUGH and ESTEVAO.  It should be noted that the Wareham Police Department stopped Domonique LINEBAUGH and ESTEVAO in a domestic argument on this same date, which did not lead to charges. Law enforcement informed PAINTER and LINEBAUGH that there had been developments in an investigation of ESTEVAO and that law enforcement was concerned there were potentially dangerous materials present within the residence that should not be there. At this time, PAINTER, the owner of the residence, signed a consent to search form limited to the bedroom which had been utilized by ESTEVAO and Domonique LINEBAUGH.

19. Within minutes of searching the bedroom, S/A Higgins observed a large black guitar case. Upon removing the guitar contained within the guitar case, S/A Higgins observed two PVC

pipes, white in color, each having end caps which appeared to be glued, and in the center of each device had tape black in color around the center of the device. At this point, the area of the residence was cleared pending MSP Bomb Squad response and examination of the devices.

20. Upon arrival of the MSP Bomb Technician, each potential device was later X-Rayed using a portable X-Ray system. This Technician determined that both items were similar in construction and design, consisting of approximately one inch to one inch and one half width poly vinyl chloride ("PVC"), approximately 5-6 inches in length, capped at both ends with the same PVC type of material. The MSP Bomb Technician also observed black electrical tape securing the approximate middle of each suspect device. This type of construction is consistent with the design of potential destructive devices known as pipe bombs utilizing PVC as a containment mechanism.

21. The MSP Bomb Technician, based upon his training, knowledge, and experience and utilizing the diagnostic X-Ray equipment observed on the X-Ray an unknown and unidentified filler secreted within the cavity of each PVC pipe. Also observed on the X-Ray was a hole in the center of each PVC pipe underneath the black electrical tape. This is also consistent with the construction and design of pipe bombs. The MSP Bomb Technician also made observations on the weight of each

individual possible device which further indicated that the pipes were not empty.

22. After all observations and X-Rays, the MSP Bomb Technician in consultation with ATF personnel agreed that both possible devices would be secured in a ballistic protection bag and removed from the premises.

23. Upon her arrival at the residence, Domonique LINEBAUGH was uncooperative with any police questioning and immediately attempted to record law enforcement on a mobile device. She was asked whether she played or owned a guitar and she said "no."

24. On October 14, 2019, MSP Bomb Technicians rendered both devices safe and conducted a thermal test of a sample of the filler material from one of the devices. The material ignited. Based on this test and the other examination conducted by the MSP Bomb Technicians, and based my experience and training, I believe the two devices to be explosive devices commonly known as pipe bombs, and therefore to qualify as weapons subject to registration in the National Firearms Registration and Transfer Record.

25. We have consulted with the component of ATF that maintains the National Firearms Registration and Transfer Record and determined that none of the following individuals has any National Firearms Act weapon, including any destructive device, registered to him or her: Alexander ESTEVAO, Michael PAINTER,

Tina LINEBAUGH, and Domonique LINEBAUGH.  Moreover, no individual has any such weapon registered to him or her at 174 Marion Road in Wareham, Massachusetts.  In addition, we have determined that Alexander ESTEVAO is not a licensed dealer in firearms.

## CONCLUSION

26.  Based on the forgoing, and based on my training and experience, I submit there is probable cause to believe that Alexander ESTEVAO has committed violations of federal firearms laws, including 26 U.S.C. § 5861(d), possession of unregistered firearms, and 18 U.S.C. § 922(a)(1)(A), engaging in the business of dealing in firearms without a license.

_____
DAVID F. SIMMONS
SPECIAL AGENT, ATF

Sworn and subscribed to before me this 17th day of October, 2019.

_____
M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS